UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN S. CHAMBERLIN, et al, | |
| Plaintiffs, | Civil Action No. 09-3443 (JAP) |
| v. | **OPINION** |
| BROWN-FORMAN CORPORATION, | |
| Defendant. | |

This is a breach of contract action in which Plaintiffs, eight former executive employees of Lenox Incorporated ("Lenox"),[1] a subsidiary of defendant Brown-Forman Corporation ("BFC" or "Defendant"), assert that BFC breached an agreement to guarantee the payment of certain retirement benefits promised by Lenox. The case was removed by BFC to the district court from the Superior Court of New Jersey on the basis of diversity jurisdiction. Presently before the Court is Plaintiffs' motion to remand the matter to state court. Also before the Court is a motion by BFC to dismiss the complaint for failure to state a claim upon which relief can be granted, and a cross-motion for partial summary judgment by Plaintiffs' on the issue of liability. The Court decides the matters without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Plaintiffs' motion is granted and this matter shall be remanded. The Court, having found that it lacks jurisdiction over this matter, does not reach the remaining motions.

---

[1] Lenox is not a party to this action.

I.   **Background**

In 1983, Plaintiffs were executive employees at Lenox and were entitled to certain employment benefits. Compl. ¶ 12. Among these was participation in the Supplemental Executive Retirement Income Plan ("SERIP"), which provided Plaintiffs with certain retirement and health benefits. *Id.* ¶ 13, 15.

Concerned that it could be the target of a corporate takeover, in June of 1983 Lenox entered into separate agreements (the "Severance Agreements") with each Plaintiff "to provide enhanced severance benefits to assure the continuous dedication of the Executive to Lenox's business and as an incentive for them to remain with Lenox despite the possibility of a takeover or buyout." *Id.* ¶ 17. These agreements provided that Plaintiffs would receive certain benefits if a change of control of Lenox took place that included a lump sum cash payment, the purchase of an annuity contract to pay benefits, payment for expired stock options, two years of payments for life, medical and dental insurance, and a guaranteed redemption price for stock options. *Id.* ¶ 18. Because these benefits expired if Plaintiffs remained with Lenox for a certain time after a change of control occurred, these agreements would have provided an incentive to Plaintiffs to resign in the event of a takeover. *Id.* ¶ 19.

In the fall of 1983 Lenox became a wholly-owned subsidiary of BFC when BFC purchased the company. *Id.* ¶ 22. Recognizing that the benefits available to Plaintiffs pursuant to the Severance Agreements would provide an incentive for Plaintiffs to resign subsequent to the change in control, "[BFC], by and through Lenox," offered Plaintiffs alternative benefits to discharge Lenox's obligations under the Severance Agreements. *Id.* ¶¶ 23, 24. The parties entered into new agreements, herein after referred to as the "Waiver Agreements," which

superseded and terminated (with limited exceptions not relevant to this case) the Severance Agreements.  Waiver Agreement ¶¶ 5, 6 attached as Ex. B to Blodgett Aff.

The Waiver Agreement provided immediate benefits to each Plaintiff that essentially mirrored what the Plaintiff would have received under the Severance Agreement had they resigned.  For example, the Waiver Agreement provided that Lenox would pay each Plaintiff a lump sum cash equal to a multiple of annual compensation.  *Id.* ¶ 1.  It further provided that Lenox was to amend the SERIP so that (i) each employee would be fully vested as of June 1983 and (ii) should the employee die before reaching age 55, the vested benefit would be converted from a life annuity to a survivor annuity for the benefit of the deceased employee's spouse.  *Id.* ¶ 2.  Most importantly, and central to the instant dispute, each Waiver Agreement contained the following provision: "Brown-Forman Corporation guarantees Lenox's performance under this Agreement."  *Id.* ¶ 10.

Each Plaintiff eventually retired from Lenox and began collecting retirement benefits pursuant to the SERIP.  Compl. ¶ 29.  However, by letter dated November 12, 2008, Plaintiffs were advised by Lenox[2] that their health benefits would be discontinued after January 1, 2009.  *Id.* ¶ 30.  Shortly thereafter, on November 23, 2008,  Lenox filed for bankruptcy protection.  On November 24, 2008, Lenox advised Plaintiffs it would "no longer be in a position to support [SERIP]" and ceased making SERIP payments to Plaintiffs.  *Id.* ¶ 32-33.

Thereafter, Plaintiffs demanded that BFC, pursuant to the guarantee provision in the Waiver agreement, make the payments under the SERIP that Lenox had ceased making.  BFC refused.  *Id.* ¶ 35-36.  This action followed.  As of the date of the filing of the complaint,

---

[2]At this time the company was Lenox Group, Inc., a successor company to Lenox.

Plaintiffs claim the following amounts due and owing:

| Plaintiff | Pension Benefits Claimed | Medical Benefits Claimed |
|---|---|---|
| Chamberlin | $39,466.96 | $0 |
| Lichtenstein | $26,434.33 | $7,573.02 |
| Grzelecki | $16,643.25 | $3,336.71 |
| Bylin | $15,377.96 | $1,489.54 |
| LaForge | $11,651.25 | $6,666.79 |
| Hansen | $8,567.00 | $4,842.50 |
| Simich | $8,122.01 | $1,405.69 |
| Gallagher | $4,179.61 | $0 |

*Id.* ¶ 37.

Plaintiff's complaint in this action contains two counts. The first count seeks a declaration that the guarantee in the Waiver Agreement requires Defendant to make the payments under the SERIP. The second count alleges that Defendant breached the guarantee in the waiver agreement by refusing to make the payments. The relief sought by Plaintiffs includes (1) a declaration as described; (2) judgment in the amount of the unpaid pension and medical benefits; and (3) an order requiring Defendant to resume ongoing payments of pension and medical benefits.

**II.    Legal Analysis**

A.    Motion to Remand

As noted earlier, Defendant removed this case on the basis of diversity jurisdiction. Plaintiffs have moved to remand this action to state court, arguing that defendant has not shown that the amount in controversy exceeds $75,000 for any plaintiff, the amount required for

diversity jurisdiction. 28 U.S.C. §§ 1332(a), 1447. In particular, Plaintiffs argue that future pension and medical benefits are not included in the amount-in-controversy calculation and, therefore, the requisite threshold is not met. Defendant responds that because Plaintiffs seek an injunction in this case ordering Defendants to make future payments, future payments are properly considered in the calculation and, based upon the value of future payments over the life expectancies of each Plaintiff, the amount in controversy exceeds the statutory threshold.

It is well established that "removal statutes are to be strictly construed against removal and all doubts resolved in favor of remand." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). On a motion to remand, the removing party bears the burden of establishing the propriety of removal. *Id.* Consequently, Defendants here must show that the amount in controversy exceeds the $75,000 minimum, and it must make such a showing "to a legal certainty." *Samuel-Bassett v. KIA Motors Amer., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004).

The relevant facts applicable the determination of the Court's jurisdiction are not in dispute. The issue on this motion distills down to the question of whether, in calculating the amount in controversy, the Court may properly consider only the amounts alleged to be due and owing at the time the complaint was filed, or whether the Court must consider the value of future benefit payments. This question arises in cases such as the present one because a plaintiff who prevails in such an action will recover only the amounts presently due, but the judgment will establish the plaintiff's right to future payments. There appears to be no dispute between the parties that the jurisdictional threshold in this case is met if future payments are considered toward the amount in controversy, but is not met if the value future payments is not counted.

As a general rule, "when calculating the amount in controversy, the District Court will

only consider the amount of damages that have accrued up until the point that the case was filed." *Russ v. Unum Life Ins. Co.*, 442 F. Supp. 2d 193, 197 (D.N.J. 2006). In this Circuit, in cases where "a plaintiff brings a suit for payment of money as part of an ongoing and continually accruing obligation, such as an installment contract, the amount in controversy is generally limited to the amount then due and owing, even if a judgment would have collateral estoppel effects on liability for future payments." *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999) (citing *Aetna Cas. & Sur. Co. v. Flowers*, 330 U.S. 464, 467, 67 S. Ct. 798, 91 L. Ed. 1024 (1947) ("If this case were one where judgment could be entered only for the installments due at the time of the commencement of the suit, future installments could not be considered in determining whether the jurisdictional amount was involved, even though the judgment would be determinative of liability for future installments as they accrued.")). The exception to this rule is "[w]here the validity of the contract itself -- rather than the meaning or application of any contractual language -- is at issue, the full value of the contract, including any future payments that may possibly become payable to the insured, may be taken into account in computing the amount in controversy." *Russ*, 442 F. Supp. 2d at 197 (quoting *Hilley v. Mass. Mutual Life Ins. Co.*, 32 F. Supp. 2d 195, 196 (E.D. Pa.1998).

     Plaintiff relies heavily on *Russ v. Unum Life Ins. Co.*, in which the plaintiff, Russ, brought suit against an insurer under to two disability policies. Under the policies, Russ was to be compensated until age 65 for any disability that resulted from "sickness" and for life for any disability that resulted from an "accident." Russ applied for benefits under the policies and the insurance company determined Russ was entitled to benefits under the "sickness" provision. Russ filed suit in state court seeking a declaration that he was entitled to benefits under the

"accident" provision, and the insurer removed the action to federal court. The district court remanded the action, finding that the amount in controversy was not met because the value of future payments under the policy could not be considered in calculation of that amount. 442 F. Supp. 2d at 199. The court held that because the parties were disputing the interpretation of terms of the contract rather than the validity of the contract as a whole, only the value of the payments due at the time of the filing of the complaint could be considered. *Id.* The court further found that because the plaintiff was 59 years of age at the time of the suit, the value of any benefits he would be entitled to after he turned 65 was purely speculative. *Id.*

The dispute in the instant case similarly centers on the interpretation of contractual terms rather than the validity of the agreement or the guarantee as a whole. Specifically, the present dispute centers on the interpretation of a single provision of the Waiver Agreement that states, "Brown-Forman Corporation guarantees Lenox's performance under this Agreement." Waiver Agreement ¶ 10. Neither party takes issue with the validity of the Waiver Agreement. Nor does either party take issue with the validity of the guarantee provision. Defendant has not repudiated the entire guarantee provision; rather, it disputes the provision's applicability the SERIP payments. Therefore, what is disputed in the present case is the scope of the guarantee provision, *i.e.*, what "performance" is being guaranteed by this provision.

"[W]here the dispute only concerns the interpretation of a contractual term . . . the amount in controversy is conceived to be limited to the sums already withheld on the basis of the disputed interpretation." *Hilley*, 32 F. Supp. 2d at 196. This is because under these circumstances, "the amount, indeed the possibility, of future payments is too speculative to be taken into account in determining the amount in controversy." *Id.* In the instant case, Plaintiffs

allege that the guarantee provision obligates Defendant to make ongoing SERIP payments – but this is only to the extent that Lenox does not make the payments.  Therefore, even if Plaintiffs prevail on their claims, Defendant's obligation to make any future payment would not arise until and unless Lenox first fails to make them.  As such, the present case is analogous to those disability insurance cases where future payments are deemed too speculative to include in the amount controversy.  For example, the court in *Hilley* – a disability insurance case that centered on whether Plaintiff was "disabled" under the terms of the contract – held that future payments were too speculative because plaintiff would have been entitled to future disability benefits "only so long as there were no material changes in her position." 32 F. Supp. 2d at 196.  Likewise, Plaintiffs in this case would be entitled to future benefit payments from BFC only so long as there was no material changes in Lenox's position regarding the SERIP payments.

     Among the relief sought in this case is an order "immediately requiring the resumed payments of pension and medical benefits due to each of the Plaintiffs."  Defendant argues that because Plaintiffs seek this injunctive relief, future payments are put in issue and therefore should be included in the amount in controversy.  They point to the rule in this circuit is that where "a plaintiff seeks an injunction, the amount in controversy is measured by the value of the interest sought to be protected by the equitable relief requested." *Hunter v. Greenwood Trust Co.*, 856 F.Supp. 207, 219 (D.N.J. 1992) (citing *Spock v. David*, 469 F.2d 1047, 1052 (3d Cir.1972), rev'd on other grounds after remand, *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976)).  However, in cases such as the present case, "the simple invocation of injunctive relief does not somehow transform a case – otherwise ineligible to be heard in diversity – to one properly brought in federal court." *Hilley*, 32 F. Supp. 2d at 196.  First, the

8

gravamen of Plaintiffs' claim is whether the guarantee provision in the Waiver agreement requires Defendant to guarantee Lenox's obligations to make payments under SERIP.  A judgment with respect to this issue will have an effect with respect to future payments, however, this effect is merely collateral.  Moreover, as set forth above, the value of any potential future benefits is speculative.  As a result, and because the amount of benefits owed to each Plaintiff at the time of the filing of the complaint was less than $75,000, the Court finds that Defendants have not met their burden to show that the amount in controversy meets the jurisdictional threshold.  The Court finds diversity jurisdiction to be lacking, and the matter shall be remanded to the Superior Court of New Jersey.

**III.    Conclusion**

For the reasons above, Plaintiffs' motion to remand is granted.  Lacking jurisdiction, the Court does not reach the remaining motions.  An appropriate Order accompanies this Opinion.


   /s/ Joel A. Pisano
   JOEL A. PISANO, U.S.D.J

Dated: March 1, 2010.